IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRI R. LOWE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-704-G-BN |
| | § | |
| DALLAS POLICE DEPARTMENT, ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Sherri R. Lowe has filed this *pro se* action against the City of Dallas, the Dallas Police Department ("DPD"), five unnamed DPD officers, Green Oaks Hospital, and the Texas State Legislature. Her action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior U.S. District Judge A. Joe Fish.

Before the Court for determination are a motion to dismiss or for a more definite statement filed by Green Oaks, *see* Dkt. No. 9; motions to dismiss filed by DPD and the City, *see* Dkt. Nos. 11 & 12; a motion to quash service as to the unnamed DPD officers, *see* Dkt. No. 23; and three motions filed by Lowe, *see* Dkt. Nos. 32, 33, & 49. Responses and replies to certain motions have been ordered and filed.

The undersigned now enters the following findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons explained below, the motions to dismiss and the motion to quash should be granted; Lowe's motions,

construed as unauthorized further attempts to amend her claims, should be denied without prejudice; and all claims except those against unnamed DPD officers for violations of the Fourth Amendment and procedural due process should be dismissed without prejudice to Lowe's filing, within a reasonable time to be set by the Court, an amended complaint that cures the deficiencies that the undersigned identifies below. If Lowe fails to properly amend her remaining claims by the deadline to be set by the Court, those claims should be dismissed with prejudice, and this case should proceed only on the Fourth Amendment/procedural due process claims against the unnamed DPD officers.

## Applicable Background

Lowe asserts that, on March 8, 2016, she appeared at a Dallas police substation to file a complaint against unnamed "peace officers" and Green Oaks for allegedly kidnaping and drugging her on March 26, 2013. *See* Dkt. No. 7 at 3. After she related the 2013 incident to the desk officer, that officer "informed [her] that [she] could not file a report without the peace officers' names." *Id.* Lowe then "informed him that [she] did not need to know their name[s] ... to file a report on the matter." *Id.* Then, according to Lowe,

> [t]he sergeant was called out and he started making statements that I would be taken to a mental hospital. I stated, "Are you refusing to help me?" He replied, "Be quiet, if you say anything else I am going to have them detain you." I informed him that I was not committing a criminal act. He made a statement and asked me to reply. I did not reply. So, he had peace officer #1 Jane Doe search my persons, and three male peace officers surrounded me and detained me and took me to Green Oaks Hospital.
> Without a court order, Green Oaks Hospital pulled down my

clothes against my "will and permission" shot me up with drugs and made me sign documents that I had no understanding of due to the drugs. The drugs caused me to be in a zombie like state, loose of memory, sporadic muscle movement in my face, and onset of arthritis. It made me very sick. I contacted Medical City Green Oaks Hospital to [find] out the name of the medication that they gave me and they refused to me the information. I requested the medial records and the information is not in my medical records. Green Oaks Hospital informed me that it could keep me for 90 days without a court order. I was mortified that I could be drugged and held against my "will" without having access to court and jury for wanting to file a police report. Not only that, Green Oaks Hospital received Medicaid benefits by using my signature.

*Id.* at 3-4.

Lowe asserts that these actions were taken "under the color of law passed by the State of Texas Legislature, in which, [she] seeks declaratory and injunctive relief from the Texas State Legislature – Texas Health and Safety Code § 573.011 Application for Emergency Detention, because it violates the Constitution and Bill of Rights. This law takes away my civil liberties without access to the courts." *Id.* at 4.

She further asserts that these actions occurred "because of [her] race," *id.*, and that these factual allegations support claims under the Fourteenth Amendment to the United States Constitution (citing 42 U.S.C. §§ 1983 and 1985) and under various state law causes of action, *see id.* at 4-7. And she requests both injunctive relief and monetary damages. *See id.* at 8.

These factual allegations, claims, and requests for relief are drawn from the amended complaint (titled "Tort (1st Amended)") filed by Lowe on March 30, 2017 [Dkt. No. 7]. This filing is Lowe's first amended complaint filed after she initiated this action on March 10, 2017.

And, while Lowe has submitted various filings that could be construed as further attempts to amend her complaint, including one titled Verified Tort for Damages and for Declaratory and Injunctive Relief [Dkt. No. 17], *see also* Dkt. Nos. 32, 33, & 49, none of these arguable attempts to further amend are proper, as a plaintiff may amend her complaint only "once as a matter of course" and only then within certain time frames. FED. R. CIV. P. 15(a)(1). Additional amendments require either "the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2); *see, e.g., Mateo v. Dawn*, No. 14-CV-2620 (KMK), 2016 WL 5478431, at *7 (S.D.N.Y. Sept. 30, 2016) ("Plaintiff is permitted to amend his complaint once as a matter of right and any time thereafter with leave of the court." (citations omitted)).

The Court should therefore deny without prejudice Lowe's pending motions [Dkt. No. 32, 33, & 49] construed as unauthorized attempts to further amend her claims.

## Legal Standards and Analysis

I.    Motions to Dismiss and for a More Definite Statement

### A.    Legal Standards

In deciding whether a claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, the plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide

the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The Supreme Court of the United States "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495

F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Although the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice

given to the parties," the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

"A motion for a more definite statement under [Federal Rule of Civil Procedure] 12(e) is available where the pleading is so vague or ambiguous that the party cannot reasonably prepare a response." *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 936, 946 (N.D. Tex. 2014) (quoting *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013); internal quotation marks omitted). Such motions are not a substitute for discovery, and, "[w]hen a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede its ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (citations, quotation marks, and original brackets omitted).

### B.    Lowe cannot allege claims against the DPD, a non-jural entity.

A plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. And, as this Court has repeatedly recognized, the DPD is not a jural entity subject to suit. *See, e.g.,*

*Hagwood v. Dallas Police Dep't*, No. 3:15-cv-2622-L-BN, 2015 WL 6688721, at *3 (N.D. Tex. Sept. 11, 2015), *rec. accepted*, 2015 WL 6690045 (N.D. Tex. Oct. 30, 2015); *see also Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby*, 939 F.2d at 313)).

### C.  Lowe has not alleged an equal protection claim.

Lowe alleges that the defendants "deprived [her] of equal protection of the laws ... on the basis of race under the Fourteenth Amendment to the United States Constitution." Dkt. No. 7 at 4.

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, which "'is essentially a direction that all persons similarly situated should be treated alike,'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); *see also Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("The Equal Protection Clause directs that persons similarly situated should be treated alike." (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982))).

In making an equal protection claim, a plaintiff typically alleges that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Reno*, 568

F.3d at 212 (internal quotation marks omitted).

But Lowe fails to allege that she was treated differently from others similarly situated. *See id.* at 212. And no equal protection violation is alleged where a plaintiff "fails to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213); *see also Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (a viable claim under the Equal Protection Clause must include an allegation that plaintiff "has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'" (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))); *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) ("Woodard has made no showing that Andrus is selectively enforcing the state statute based upon any impermissible ground. She does not assert that Andrus is distinguishing between different groups. Therefore, Woodard has not stated an equal protection claim." (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996))).

### D. Lowe has alleged a claim that her rights protected by the Fourth Amendment and related procedural due process were violated.

Lowe invokes alleged due process violations at multiple points in the operative complaint. *See, e.g.,* Dkt. No. 7 at 6-7 (alleging that "[t]he above-described conduct by defendants deprived Plaintiff of her liberty and freedom without due process of law in contravention of the Fourteenth Amendment to the United States Constitution"; that "Defendants acted with willful, wanton and reckless disregard of and indifference to

Plaintiff['s] constitutionally guaranteed right to due process of law"; that "[t]he above-described conduct by defendants intentionally discriminate violence as a means to create terror and fear to further their objectives to take Plaintiff['s] freedom and liberty away without due process," and "request[ing] that the Court [declare] that defendants['] locking individuals up in a mental institution [violates] due process"); *see also id.* at 5 (characterizing her Section 1983 claim as based on alleged violations of her "procedural and substantive rights under the Fourteenth Amendment to the U.S. Constitution").

The Court can reasonably infer from the facts alleged that Lowe's due process claims occurred in the context of a mental health seizure, implicating "the Fourth Amendment's guarantee against unreasonable searches and seizures," which applies "in both criminal and civil contexts" and which the Fifth Circuit (following the lead of other circuits) has held "applies when government officials execute a mental health warrant." *Linbrugger v. Abercia*, 363 F.3d 537, 541 (5th Cir. 2004) (cautioning that "the balance struck in the criminal context between an individual's rights and the government's law enforcement imperatives may require modification in the field of mental health activity"; citations and footnote omitted); *see also Walker v. Oldham*, 996 F.2d 308, 1993 WL 241902, at *2 (5th Cir. June 25, 1993) (per curiam) ("With respect to seizure of a mentally ill person, our research discloses no cases in which this court has previously addressed the question. Other courts, however, hold that a civil commitment is a 'seizure' subject to the Fourth Amendment and that probable cause is required for such a seizure." (citations omitted)).

The Fourth Amendment's applicability requires that the Court analyze any substantive due process claim under that specific amendment's relevant standards. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) ("[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is]properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (citing *Graham*, 490 U.S. at 394)); *cf. Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 292-93 (D. Vt. 2013) ("The Supreme Court has not extended the *Graham* rule to procedural due process claims. Nor would it be appropriate to do so. Procedural due process guarantees a fair procedure. A procedural due process claim seeks to redress the process by which a liberty or property interest is denied, not the actual denial of that right. When the same conduct states a substantive due process claim and a violation of another substantive right, the *Graham* rule permits civil rights claimants to assert violations of that substantive right only. If extended to procedural due process claims, the *Graham* rule would prevent claimants from asserting a separate, procedural right. Such an extension would place a significant limitation on procedural due process rights." (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990))).

But, while *Graham* may not mean that a claim that Lowe's right to procedural due process is subsumed by the Fourth Amendment, practically speaking, it cannot be that the analysis differs as between a Fourth Amendment violation and a procedural due process violation based on the same seizure. As another district court in this circuit recently put the analysis,

> [u]nlike the typical due process analysis, in Fourth Amendment seizure cases, the boundaries of the "process that is due" are defined by Fourth Amendment principles, which are "tailored explicitly for the criminal justice system...." *Gerstein v. Pugh*, 420 U.S. 103, 124 n. 27 (1975). This could mean that [the plaintiff's] due process claims are subsumed by the Fourth Amendment. Or alternatively, it could mean that [her] due process claims, while conceptually freestanding, can never extend further than would a Fourth Amendment unreasonable seizure claim. Under either theory, the effect here is the same: [Lowe's] due process claims fail if she is unable to prove that [the defendants' conduct] violated the Fourth Amendment.

*Mabry v. Lee Cty.*, 168 F. Supp. 3d 940, 943-44 (N.D. Miss. 2016) (citations omitted); *see also Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996) ("To the extent that the involuntary seizure of a person for an emergency mental health evaluation mirrors a criminal arrest, the Fourth Amendment's protection against unreasonable searches and seizures more specifically applies to [the seized person's] situation than the Fourteenth Amendment's general substantive and procedural due process guarantees."); *cf. Wernecke v. Garcia*, 591 F.3d 386, 391 n.7 (5th Cir. 2009) ("[W]here individuals bring both Fourth and Fourteenth Amendment claims premised upon the same underlying facts – the removal of children – the Fifth Circuit and other circuits have held that the procedures required for a constitutional search and seizure under the Fourth Amendment are adequate to protect the parents' procedural due process

rights and liberty interest in directing the upbringing of their children." (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 434-35 (5th Cir. 2008) (in turn collecting cases))).

But, before considering Lowe's factual allegations under the Fourth Amendment/procedural due process, the undersigned must address the City's argument that any procedural due process claim "is foreclosed by *Parratt v. Taylor*, 451 U.S. 527 (1981)," simply because "Texas provides adequate post-deprivation [remedies]" – which here are, according to the City, state law causes of action for false arrest/imprisonment and for malicious prosecution. Dkt. No. 12 at 7.

"The *Parratt/Hudson* doctrine dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Brooks v. George Cty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996) (citing *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc) (discussing, in turn, *Parratt*, *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517 (1984))). And "this doctrine is most frequently applied when prisoners (or others) are deprived of their personal property but have the opportunity to seek return of their property (or be made whole) through a post-deprivation process." *LeBeouf v. Manning*, 575 F. App'x 374, 379 (5th Cir. 2014) (per curiam) (citations omitted).

But the City's "version of the doctrine" – under which "the mere presence of post-deprivation remedies prevents a due process claim" – "is blatantly misleading and

is not the law." *Brooks*, 84 F.3d at 165. Instead, "[t]he doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Id.* (citing *Zinermon*, 494 U.S. at 128-32). And the Fifth Circuit has held that, where "the alleged deprivation was authorized, the deprivation was foreseeable, [and the defendant] had an opportunity to provide a pre-deprivation remedy," which he failed to provide before depriving the plaintiff of his property interest, "the district court erred in dismissing [the plaintiff's] procedural due process claim on the basis of the availability of an adequate post-deprivation remedy." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007); *see also LeBeouf*, 575 F. App'x at 380 ("[A] § 1983 action for deprivation of procedural due process is barred under the *Parratt/Hudson* doctrine only if, *inter alia*, the deprivation was unpredictable or unforeseeable and pre-deprivation process would have been impossible or impotent to counter the state actor's particular conduct. Here, unlike in *Parratt* where it was impossible to predict when a prison official's negligence may result in an inmate being deprived of his property, it was predictable that LeBeouf would be deprived of her property interest when Manning informed her that if she would not submit to the psychiatric hospitalization she must resign or be terminated." (citation omitted)).

Any alleged procedural due process violation asserted based on Lowe's factual allegations is not barred by the *Parratt/Hudson* doctrine. Liberally construed, Lowe's *pro se* complaint states a violation of procedural due process tied to an assertion that

Texas Health and Safety Code § 573.011 is unconstitutional and that Lowe should have been given access to judicial process before being committed. *See* Dkt. No. 7 at 4 ("I was mortified that I could be drugged and held against my 'will' without having access to court and jury for wanting to file a police report.... [Section 573.011] takes away my civil liberties without access to the courts."). Based on the factual assertions that the Court must accept as true for present purposes, the alleged depravation of Lowe's liberty interest is therefore not random, unpredictable, or unforeseeable. *Cf. Shugart v. Six Unknown Fannin Cty. Sheriffs*, 694 F. App'x 299 (5th Cir. 2017) (mem.) (reversing district court's dismissal – as barred under the *Parratt/Hudson* doctrine – of alleged due process violation based on the plaintiff's assertion "that the destruction of his greenhouse resulted from a misapplication of Texas Health and Safety Code §§ 481.153," which included a "challenge to the constitutionality of § 481.153 on procedural due process grounds").

Turning to the alleged seizure of Lowe, "even where a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Allen v. Cisneros*, 815 F.3d 239, 244-45 (5th Cir. 2016) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002)). "Reasonable suspicion exists if there are 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a detention.'" *Id.* at 245 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968); brackets omitted).

"[D]etermining reasonableness is an objective inquiry" – did "'the circumstances,

viewed objectively, justify the challenged action"'"? *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (quoting, in turn, *Scott v. United States*, 436 U.S. 128, 138 (1978)); brackets and internal quotation marks omitted). And "[t]he Fourth Amendment requires only some minimum level of objective justification for the officers' actions – but more than a hunch – measured in light of the totality of the circumstances, considering the facts available to the officer at the time of the detention." *Id.* (citations and internal quotation marks omitted omitted).

Given the facts as alleged that must be taken as true for purposes of the motions to dismiss, the undersigned cannot find that there was reasonable suspicion to seize Lowe and transport her to a mental hospital on March 8, 2016 as a result of her alleged actions at the police substation. That assessment could change at a later stage of this proceeding, such as after the filing of a motion for summary judgment setting out the views of the officers who detained Lowe and on "which competent evidence outside the pleadings can be considered by the court after the parties have had an opportunity to conduct discovery." *Henderson v. Wells Fargo Bank, N.A.*, No. 3:16-cv-492-L, 2016 WL 5816227, at *1 (N.D. Tex. Oct. 5, 2016).

But, for now, a claim that unnamed DPD officers violated Lowe's rights under the Fourth Amendment and as protected by procedural due process should survive dismissal.

### E. Lowe has not alleged that the City of Dallas is liable under Section 1983.

It is clearly established that "[a] municipality and/or its policymakers may be

held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). To assert that the City is liable under *Monell*, Lowe must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also id.* ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" (quoting *Piotrowski*, 237 F.3d at 578)). And, while Lowe's allegations implicate a state statute, she has not alleged that an official policy of the City of Dallas resulted in the "violation of a constitutional right." *Id.* The City itself therefore cannot be liable for the Fourth Amendment/procedural due process claim that should survive dismissal.

### F.    Lowe has not alleged that Green Oaks is liable under Section 1983.

Green Oaks argues in its motion to dismiss that Lowe "has asserted that all Defendants acted under color of state law, but did not plead facts to support each assertion as to [Green Oaks], which is a healthcare institution." Dkt. No. 9 at 2-3. Green Oaks is correct that

> "[p]rivate individuals generally are not considered to act under color of law," *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), but "private

action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)).

*Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017).

Another judge of this Court has examined in the civil commitment context the "three different tests for determining whether the conduct of a private actor can be fairly attributable to a state actor," and, there, concluded that the plaintiff's operative complaint was "devoid of the factual allegations necessary to plead state action under the nexus test, the public function test, or the state coercion or encouragement test" and that therefore the plaintiff "failed to establish the necessary state action required to hold a private actor liable under § 1983," which required dismissal of the private actor under Rule 12(b)(6). *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 774-76 (N.D. Tex. 2014).

Like in *Gordon*, Lowe has failed to allege that Green Oaks's alleged actions are fairly attributable to the State. "The mere existence of state involuntary commitment statutes does not create a close nexus between the state and a private hospital such that the hospital – or its employees – can be classified as state actors for § 1983 purposes." *Id.* at 774 (citing *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992); *Goss v. Memorial Hosp. Sys.*, 789 F.2d 353, 356 (5th Cir. 1986)). While Lowe has alleged that DPD officers "detained [her] and took [her] to Green Oaks Hospital," Dkt. No. 7 at 4, "[t]his brief interaction does not suggest any type of joint participation or interdependence between [Green Oaks] and the state actor defendants in this case,"

*Gordon*, 57 F. Supp. at 775. Next, "[s]everal circuits, including the Fifth Circuit have held that 'the commitment and treatment of the mentally ill could not be deemed a function traditionally within the exclusive province of the state.'" *Id.* (quoting *Bass*, 180 F.3d at 243; citation omitted). Further, "the use, by hospitals, of state involuntary commitment statutes to detain mentally ill individuals does not compel or encourage involuntary commitment." *Id.* at 776 (citing *Bass*, 180 F.3d at 243).

And Lowe has not alleged that Green Oaks conspired with state actors by "'alleg[ing] specific facts to show' ... that the private and public actors entered into an agreement to commit an illegal act." *Id.* (quoting *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008)). Her citations to 42 U.S.C. § 1985, *see* Dkt. No. 7 at 2 & 4 – "part of the Civil Rights Act of 1871, [which] creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section," *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) – are not factually sufficient.

### G. As to each remaining cause of action possibly asserted against an appearing defendant, Lowe has not alleged sufficient factual allegations to state a plausible claim.

In addition to the constitutional claims discussed in detail above, Lowe labels a laundry list of presumably state law causes of action: tortious negligence; false imprisonment; intentional infliction of emotional distress; misappropriation; defamation (libel); slander; deprivation of liberty; side effects of prescription drugs; and systematic terrorism. *See* Dkt. No. 7 at 5-7.

These claims – each based on "the above-described conduct by Defendants" – are presented in "the classic 'shotgun'" manner, "where the pleader heedlessly throws a

-20-

little bit of everything into his complaint in the hopes that something will stick."
*Alidoust v. Hancock Cty., Miss.*, No. 1:17CV35-LG-RHW, 2017 WL 3298682, at *4 (S.D.
Miss. Aug. 2, 2017) (citation and internal quotation marks omitted); *see also Hinojosa*
*v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) ("When the
plaintiff's complaint uses blanket terms covering all the defendants, by lumping them
together or calling them collectively ["Defendants"] these allegations are properly
disregarded unless the reference to [particular defendants] can be clearly inferred."
(citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 & n.14 (11th
Cir. 2015) (characterizing that decision as "describing this form of 'shotgun pleading'
as a 'sin' consisting of 'asserting multiple claims against multiple defendants without
specifying which of the defendants are responsible for which acts or omissions'").

Alleging a claim by merely attaching a label and/or legal conclusion to no facts
unique to that claim – or, at best, threadbare unique facts – is not sufficient to state
a claim that is plausible on its face. Put another way, these claims as alleged each lack
sufficient facts to support an inference that a particular defendant is responsible for
a particular harm to Lowe – therefore there is no "more than the mere possibility of
misconduct," *Iqbal*, 556 U.S. at 679, which, of course, is not enough to state a plausible
claim, *see, e.g., Robbins v. State of Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242,
1247 (10th Cir. 2008) ("The burden is on the plaintiff to frame a 'complaint with
enough factual matter (taken as true) to suggest' that he or she is entitled to relief."
(quoting *Twombly*, 550 U.S. at 556)).

Lowe's final cause of action is solely against the Texas State Legislature, a

defendant that has not appeared. *Cf. Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 WL 3701967 (N.D. Tex. Aug. 7, 2017) (denying default judgment as against this defendant, finding that the "lack of proper service as to Defendant Texas State Legislature means that this defendant has not made 'an appearance for purposes of [Federal Rule of Civil Procedure] 55(b)(2)' and is currently not 'susceptible to default'" (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999))), *rec. accepted*, 2017 WL 3658799 (N.D. Tex. Aug. 24, 2017). Rather than address the merits of this claim here, the undersigned will issue a separate order that requires Lowe to show cause in writing why this defendant should not be dismissed under Federal Rule of Civil Procedure 4(m).

## II.  Motion to Quash Service

The City moves to quash the purported service of summons on each unnamed DPD officer. *See* Dkt. No. 23 (citing *Noble v. Ozborn-Hessey Logistics*, No. 4:14-cv-01149-NKL, 2015 WL 852392, at *3 (W.D. Mo. Feb. 26, 2016) (concluding that a summons directed "to the John Doe Defendants' job titles and not their actual names is insufficient to satisfy the requirement of [Federal Rule of Civil Procedure] 4(a)(1)(B)," which "states that a summons must be directed at the defendant")); *cf. Worrell v. Houston Can! Acad.*, Civ. A. No. H-07-1100, 2008 WL 818333, at *3 (S.D. Tex. Mar. 25, 2008) (dismissing, under Federal Rule of Civil Procedure 4(m), all claims against a defendant that was the subject of a similarly defective summons).

While a summons directed to a "John Doe" is not proper under Rule 4(a)(1)(B) and therefore should be quashed as defective, it is not always illegitimate – especially

for a *pro se* plaintiff – to sue a "John Doe" defendant. *See, e.g., Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (per curiam) ("The only reason to sue a 'John Doe' is to conduct discovery backed by the authority of the court.... Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." (citing *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993))).

Accordingly, the Court should quash the defective summonses, but, if the Court accepts the undersigned's recommendation that Lowe has alleged a plausible under the Fourth Amendment/procedural due process against unnamed DPD officers, she may be entitled to discovery (possibly court-sanctioned discovery) in order to identify these defendants and properly serve them.

## Recommendation

The Court should grant the motions to dismiss and the motion to quash [Dkt. Nos. 9, 11, & 12]; deny Plaintiff Sherri R. Lowe's motions construed as unauthorized further attempts to amend her claims [Dkt. Nos. 32, 33, & 49] without prejudice; dismiss without prejudice all claims except those against unnamed Dallas Police Department ("DPD") officers in violation of the Fourth Amendment and procedural due process; allow Lowe leave to file, within a reasonable time to be set by the Court, an amended complaint that cures the deficiencies identified in the findings, conclusions, and recommendation; and, if Lowe fails to properly amend her remaining claims by the deadline to be set by the Court, dismiss those claims with prejudice and allow this case to proceed only on the Fourth Amendment/procedural due process claim against the

unnamed DPD officers.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 17, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE